UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTELL JONES,

      Plaintiff,

v.

HEIDI WASHINGTON, SHERMAN
CAMPBELL, BROCKWAY, JOHN
DOE, PEEKS, UNKNOWN LEE, and
UNKNOWN LINDBERG,

      Defendants.

_____/

Case No. 2:22-cv-11047
District Judge David M. Lawson
Magistrate Judge Kimberly G. Altman

### REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT (ECF No. 33)[1]

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Martell Jones (Jones), proceeding *pro se* and *in forma pauperis*, filed a complaint naming the above listed defendants, who are employed by the Michigan Department of Corrections (MDOC). (ECF No. 1). Under 28 U.S.C. § 636(b), all pretrial matters

_____

[1] Upon review of the motion, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

were referred to the undersigned.  (ECF No. 13).

Before the Court is a motion to dismiss for failure to state a claim or alternatively for summary judgment on the basis of exhaustion jointly filed by several defendants.  (ECF No. 33).  For the reasons that follow, the undersigned RECOMMENDS that the motion for summary judgment on the basis of exhaustion be DENIED as to all moving defendants and that the motion to dismiss as to Heidi Washington (Washington), Sherman Campbell (Campbell), Amanda Peeks (Peeks), and Brandon Lee (Lee) be GRANTED for failure to state a claim.  If this recommendation is adopted, the case will proceed against Brockway, William Lindberg (Lindberg),[2] and John Doe.[3]

## II.    Background

### A.    Procedural History

On March 1, 2023, Washington, Campbell, Brockway, Peeks, and Lee filed a motion to dismiss, or alternatively for summary judgment on the basis of exhaustion.  (ECF No. 27).  In response, Jones filed an amended complaint, (ECF No. 31), in which he identified defendants by their full names, added direct allegations against each named defendant, and addressed his efforts to exhaust his remedies through the MDOC grievance system.  The undersigned then issued a

---

[2] Lindberg did not join in the motion.

[3] To date, Jones has not identified John Doe.

2

Report and Recommendation to deny defendants' original motion as moot, (ECF No. 32), which the district court adopted, (ECF No. 34).

Washington, Campbell, Brockway, Peeks, and Lee then filed the instant motion to dismiss or alternatively for summary judgment on the basis of exhaustion, which is now before the Court.  (ECF No. 33).  Jones filed a late response, (ECF No. 44), which the undersigned has accepted, (ECF No. 45), and the time for defendants' reply has lapsed.  The matter is now ready for decision.

### B.    The Amended Complaint

In the amended complaint, Jones alleges that was repeatedly sexually harassed and assaulted by Lindberg, an MDOC corrections officer at his facility. (ECF No. 31).  He alleges that he reported the harassment, and then the assaults, to another corrections officer, Brockway, who not only ignored his complaints but threatened retaliation for making them.  (*Id.*).  Brockway eventually retaliated against Jones by having Jones discharged from his residential treatment program for mental health, and Jones was transferred to an outpatient program at a different facility.  (*Id.*).  There, Jones attempted suicide, which resulted in his transfer to yet another facility and its "health crisis stabilization program."  (*Id.*, PageID.193-194).  Jones then reported the abuse he had suffered at the hands of Lindberg, but after an investigation he was transferred back to his original facility, where he was harassed and retaliated against by staff.  (*Id.*, PageID.194).  Another investigation

3

was done, and after that, Jones appealed. (*Id.*). His appeal was denied, because there was no initial or Step II grievance on file, and because "you cannot grieve the outcome of an investigation." (*Id.*, PageID.194-195).

As for the other defendants, Jones alleges that Peeks, Lee, and John Doe knew of Lindberg's harassment against Jones but failed to intervene by allowing Lindberg to repeatedly occupy cells with prisoners, unsupervised, and place them in restraints. (*Id.*, PageID.189-190). He further alleges that Campbell, warden of the facility at relevant times, and Washington, director of the MDOC, failed to adequately train, supervise, manage, and discipline their staff. (*Id.*, PageID.195-202). He also alleges that Washington, as a policymaker, did not implement and promulgate policies and procedures that could have prevented his constitutional deprivations. (*Id.*, PageID.200-201).

The moving defendants argue that Jones failed to state a claim against Washington, Campbell, Peeks, and Lee, or exhaust his administrative remedies as to any moving defendant.

### III.    Legal Standards

### A.    Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Jones is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020)

(quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

### B.     Motions to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich.

2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

## IV.    Discussion

### A.    Exhaustion of Administrative Remedies

#### 1.    Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly"

exhaust all "available" administrative remedies before filing a lawsuit challenging

prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93

(2006). Proper exhaustion of administrative remedies "means using all steps that

the agency holds out, and doing so *properly* (so that the agency addresses the

issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal

quotation marks and citations omitted). Requiring exhaustion allows prison

officials an opportunity to resolve disputes concerning the exercise of their

7

responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ]

8

prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at

94.  To be sufficient, a grievance need not "allege a specific legal theory or facts

that correspond to all the required elements of a particular legal theory." *Burton v.*

*Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles*

*by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair

notice of the alleged mistreatment or misconduct that forms the basis of the

constitutional or statutory claim made against a defendant in a prisoner's

complaint." *Id.*

## 2.   Exhaustion

Defendants note that Jones only exhausted two grievances before filing his

complaint, neither of which are relevant to this case.  (ECF No. 33, PageID.230).

However, under the PLRA a prisoner-plaintiff need only exhaust all "available

remedies." *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

> The Supreme Court has identified three situations in which an
> administrative procedure is unavailable to prisoners and is therefore not
> subject to the exhaustion requirement: (1) when (despite what
> regulations or guidance materials may promise) it operates as a simple
> dead end—with officers unable or consistently unwilling to provide any
> relief to aggrieved inmates; (2) when some mechanism exists to provide
> relief, but no ordinary prisoner can discern or navigate it because it is
> so opaque or so confusing; and (3) when prison administrators thwart
> inmates from taking advantage of a grievance process through
> machination, misrepresentation, or intimidation.

*Lamb v. Kendrick*, 52 F.4th 286, 292-293 (6th Cir. 2022) (cleaned up).  That said,

"[e]ven if an inmate has evidence to show that an administrative procedure was

unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Id.* (internal quotation marks and citations omitted).

Jones alleges that he was sexually assaulted in his cell by Lindberg in August 2021, after which he reported the assault to Brockway. (ECF No. 31, PageID.187). Brockway told Jones that Lindberg was incapable of such an act and that Jones' report was "bullshit" and "lies." (*Id.*). Lindberg then sexually assaulted Jones on four subsequent occasions that month. (*Id.*, PageID.188). Lindberg also threatened Jones that if Jones reported the abuse, he would be written up, suffer disciplinary actions, be charged criminally, and receive additional prison time. (*Id.*, PageID.192). Jones reported the further abuse to Brockway anyway, and Brockway threatened Jones with transfer and discharge from mental health services and said that Jones would be "rode out[.]" (*Id.*, PageID.192-193). After reporting Lindberg multiple times, Jones was discharged from his treatment plan and transferred to another facility at which he received less mental health treatment. (*Id.*, PageID.193).

After a second transfer, Jones filed a report under the Prison Rape Elimination Act (PREA) regarding Lindberg and an investigation was opened.

10

(*Id.*, PageID.194).  Jones was eventually transferred back to his original facility and harassed by staff in retaliation for his report.  (*Id.*).  Upon completion of the investigation, Jones requested an appeal and was informed that "you can not grieve the outcome of an investigation" and that "there has been no PREA Grievance or Step II since April 2022."  (*Id.*, PageID.194-195).

Defendants do not argue that Jones failed to exhaust his remedies against Lindberg; Lindberg is not a moving party to this motion.  However, defendants argue that being unable to grieve the outcome of the investigation applied only to Lindberg, and that Jones was required—and failed—to grieve his claims against the other defendants through the normal grievance procedure.

Though not addressed by defendants, "[t]he MDOC has eliminated the administrative grievance procedure for addressing prisoner grievances regarding sexual abuse."  MDOC PD 03.03.140, ¶ VV.[4]  The following, related provision states that "[p]risoners *may* utilize the prisoner grievance system in accordance with PD 03.02.130 'Prisoner/Parolee Grievances' to report allegations of sexual harassment or retaliation."  MDOC PD 03.03.140, ¶ WW (emphasis added).[5]

_____

[4] Available at https://www.michigan.gov/corrections/-/media/Project/Websites/ corrections/Files/Policy-Directives/PDs-03-General-Operations/PD-0303- Management-of-Offenders/0303140SexualAbuseandSexualHarassmentofPrisoners PrisonRapeEliminationActPREAeffective4521.pdf (last visited September 29, 2023).

[5] *See* footnote 2.

"However, because grievances require processing time and may not prompt immediate action, prisoners in need of immediate assistance should notify an employee." *Id.*

> The related grievance procedure, provided by defendants, states as follows:
>
> Grievances filed regarding sexual abuse, including those filed by a third party, shall not be processed as grievances under this policy but shall be reported in accordance with PD 03.03.140 "Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners." Any grievance submitted under this policy that contains an allegation of sexual abuse shall be copied by the Grievance Coordinator and forwarded to the PREA Coordinator. The original grievance shall be returned to the prisoner. *If the grievance also includes a non-PREA grievable issue, it will need to be refiled by the prisoner*.

(MDOC PD 03.02.130, ¶ D (emphasis added), ECF No. 33-2, PageID.250).

Presumably, though not explicitly stated, defendants believe that Jones' complaints regarding retaliation, supervision, policy, and failures to act are non-PREA grievable issues. However, this is unclear, and defendants provide no support for that position.

Various courts have opined that "the reporting procedure under PD 03.03.140 is 'so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'" *Haines v. Miniard*, No. 22-CV-10717, 2023 WL 3559608, at *2 (E.D. Mich. Apr. 24, 2023) (quoting *Ross v. Blake*, 578 U.S. 632, 643-644 (2016), *report and recommendation adopted*, 2023 WL 3550081 (E.D.

Mich. May 17, 2023)).  "In 2019, the Sixth Circuit found that the 'MDOC PREA grievance process is, in practice, filled with contradictions and machinations, and these contradictions and machinations render the process incapable of use.' " *Haines*, at *2 (quoting *Does 8-10 v. Snyder*, 945 F.3d 951, 965 (6th Cir. 2019)). "Though MDOC has amended its PREA policy, mystery about how to exhaust a PREA claim remains."  *Haines*, at *2.

      The MDOC's PREA reporting policy does not make clear whether complaints of failing to prevent sexual abuse fall under its procedures.  Presumably they do, as the policy "outlines the Department's approach to preventing, detecting, and responding to such conduct." [6]  As for retaliation, it is mentioned in several sections of the policy.  *See* MDOC PD 03.02.130, ¶¶  BB, GG, WW, PPP. The policy makes clear that retaliation for making a PREA report is prohibited. MDOC PD 03.02.130, ¶ PPP.  However, MDOC PD 03.02.130, ¶ WW implies that retaliation may still be grieved through the general grievance procedure.  Of note, that section uses the word *may*, which could be in reference to the prisoner's choice whether to grieve the retaliation or not.  But it could also be in reference to the grievance not being required, as the next sentence of MDOC PD 03.02.130, ¶ WW states that "because grievances require processing time and may not prompt immediate action, prisoners in need of immediate assistance should notify an

---

[6] *See* footnote 2.

13

employee."  If notifying an employee of the retaliation suffices, then Jones has

arguably exhausted his administrative remedies as to Brockway.

Due to the opacity of the PREA reporting policy, and the additional lack of

clarity in the MDOC's response to Jones' request to appeal the investigation, the

strict remedy defendants seek to impose was *not available*.  His failure to

separately grieve the moving defendants should not impede his present claims.

Equally fatal to defendants' exhaustion argument are the repeated threats of

retaliation Jones received in response to reporting his abuse and mistreatment.

Defendants do not address whether these threats may have functionally rendered

his administrative remedies unavailable.  In assessing a similar situation, the Sixth

Circuit found that even where a prisoner felt comfortable filing grievances

unrelated to the threats of retaliation,

> [c]omplaints and grievances related to petty requests and those related
> to prison-official misconduct are wholly different, particularly when
> there are specific allegations in the record that [the defendant] actually
> retaliated against [the plaintiff] for filing grievances and lawsuits
> related to a specific assault.  In our view, this retaliation and
> intimidation—if proven true—would render the grievance process
> functionally unavailable for a person of ordinary firmness.

*Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014), *aff'd*

*and remanded sub nom. Simmons v. Himmelreich*, 578 U.S. 621 (2016).

Here, although the threats Jones alleges related to reporting Lindberg's

misconduct, "a reasonable jury could conclude that [Brockway's] actions and

statements would deter a person of ordinary firmness from continuing with the grievance process" against the other defendants, as well.  These grievances would necessarily have implicated Lindberg as well, and it is reasonable to assume that after Brockway intimidated Jones from filing further reports, Jones would not feel free to file related grievances without consequence.  For this reason, independent of the MDOC policy's opacity, Jones' administrative remedies were not available to exhaust.  At the very least, defendants have not carried their burden as to exhaustion.  Accordingly, the undersigned recommends that defendants' motion for summary judgment on the basis of exhaustion be denied.

### B.      Failure to State a Claim

Defendants also argue that Jones has failed to state a claim against Washington, Campbell, Peeks, or Lee in his amended complaint.

### 1.      Supervisory Liability

Liability under § 1983 must be based on more than merely the right to control employees.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-326 (1981); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-695 (1978).  To make out a claim under § 1983, a plaintiff must allege that  "each defendant officer, through his or her own individual actions, *personally violated* plaintiff's rights[.]"  *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)  (emphasis in original).  "It is well-settled that '[g]overnment officials may not be held liable for the unconstitutional

conduct of their subordinates under the theory of *respondeat superior.*' " *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 676 (2009)). The Sixth Circuit "ha[s] long held that supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross*, 818 F.3d at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

<div align="center">2.    Peeks and Lee</div>

Defendants say that Jones' allegations against Peeks and Lee amount to a "failure to train and supervise" by allowing Lindberg to abuse Jones. (ECF No. 33, PageID.235). Both sides acknowledge that a supervisory official's failure to train or supervise an offending individual is not actionable unless he or she encouraged or directly participated the misconduct. (*Id.*; ECF No. 44, PageID.358). *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The amended complaint states that Peeks and Lee, as sergeants assigned to his housing unit, had the "duty of supervising all custodial staff" during segregation and transportation of inmates and were "legally responsible for the welfare" of those inmates. (ECF No. 44, PageID.181-182). Jones also alleges that Peeks and Lee were aware of incidents in which Lindberg placed inmates in restraints and occupied those cells with the inmates unsupervised. (*Id.*, PageID.184-185, 190). They allegedly recklessly disregarded the risk of this occurrence and failed to act on it. (*Id.*).

<div align="center">16</div>

Defendants argue that these allegations fail to establish personal involvement in Jones' deprivation, "in stark contrast to his claims against CO Lindberg and RUM Brockway, where [Jones] alleged personal conduct arising out of specific incidents or encounters."  (ECF No. 33, PageID.235-236).  The undersigned agrees.

Peeks and Lee were not alleged to have had knowledge of Jones' abuse at the hands of Lindberg.  Thus, their actions cannot be said to have encouraged or directly participated in Jones' abuse.  As such, Jones has not stated a plausible claim against Peeks or Lee.

### 3.     Campbell and Washington

Jones' allegations against Campbell and Washington are similarly flawed. Jones makes several allegations regarding Campbell, summed up by the claim that Campbell's "failure to adequate[ly] train, supervise, manage[,] and discipline his subordinates, [prison] staff maintained a practice of routinely subjecting mentally disabled prisoners to abuse."  (ECF No. 31, PageID.195).  He also alleges that Campbell had notice of mistreatment of mentally disabled prisoners and failed to act on reported information, which contributed to Jones' abuse.  (*Id.*, PageID.195-200).  Campbell is also said to have failed to separate vulnerable prisoners from staff with complaints against them, to prevent retaliation against prisoners who filed complaints, and to reprimand and terminate staff with violations.  (*Id.*).  Jones

17

does not allege that Campbell specifically knew of Lindberg or Brockway's alleged misconduct.

As to Washington, Jones notes that she is a policymaker and is legally responsible for the overall operation and management of the MDOC and each of its institutions.  (*Id.*, PageID.200).  He further says that she is responsible for the welfare of all prisoners and failed to implement and promulgate policies and procedures that would have prevented Jones' sexual abuse.  (*Id.*, PageID.200-202).

Jones has failed to allege direct involvement or encouragement of his abuse and retaliation by Campbell.  As a prison warden, was certainly tasked with implementing the training, supervision, and management of staff.  That said, such duties are insufficient to establish a constitutional violation on the part of subordinates.

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Willis v. Corizon of Mich.*, No. 21-11184, 2023 WL 6055534, at *4 (E.D. Mich. Aug. 8, 2023), *report and recommendation adopted*, 2023 WL 6049747 (E.D. Mich. Sept. 15, 2023) (quoting *Shehee*, 199 F.3d at 300).  Likewise, claims that a warden "failed to adequately train [his] subordinates," "should understand that not to train and supervise can cause abuse of authority[,]" and "fail[ed] to respond to

18

plaintiff's Step II grievance appeal[,]" are not actionable.  *Howard v. Gardon*, No. 2:10-CV-11470, 2011 WL 836757, at *17-18 (E.D. Mich. Feb. 10, 2011), *report and recommendation adopted*, 2011 WL 864278 (E.D. Mich. Mar. 9, 2011); *see also Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (on appeal from district court judgment granting motion for directed verdict, the plaintiff "made no showing that any of the supervisory officials who were defendants in this case actively participated in or authorized any harassment of appellant.  The testimony presented by [plaintiff], at best, indicates that some instances of alleged harassment were brought to the attention of prison supervisory officials.").

Jones' claims against Campbell sound largely under the same theories that were rejected by the authorities above, based on Sixth Circuit holdings.  To the extent that Jones alleges a pattern or practice of turning a blind eye to sexual abuse at his facility, his allegations are wholly conclusory.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Therefore, he has failed to state a claim against Campbell.

Similarly, regarding Washington, courts have found that her role as MDOC director does not alone subject her to liability.  As one court explained:

> Plaintiff's pleading fails to allege Defendant Washington's personal involvement in the diagnosis and/or treatment of his cirrhosis of the liver / Hepatitis C from 2005 through May 2016.  As Defendants observe, Plaintiff's claim against Defendant Washington is based upon her role as MDOC Director, and the complaint does not reference a specific policy, such as any of the policy directives concerning

healthcare. Moreover, even if the complaint specified a policy, and even if Defendant Washington is a "decision maker" or "policy maker," falling within the general purview of Plaintiff's vague reference to "the policymakers," the complaint does not allege that Defendant Washington had a hand in the policy that was the "moving force" behind the alleged deliberate indifference. As such, although he apparently believes he will prove so, Plaintiff has not alleged that *Defendant Washington* "made a 'deliberate choice to follow a course of inaction from among various alternatives,' " and was "correspondingly indifferent to the rights of HCV patients in the MDOC."

*Crawford v. Washington*, No. 4:17-CV-11423, 2017 WL 8810687, at *8 (E.D. Mich. Nov. 7, 2017) (cleaned up), *report and recommendation adopted*, 2018 WL 747706 (E.D. Mich. Feb. 7, 2018); *see also Abcumby v. Mich. Dep't of Corr.*, No. 21-11281, 2022 WL 4459889, at *2 (E.D. Mich. Sept. 7, 2022), *report and recommendation adopted*, 2022 WL 4456239 (E.D. Mich. Sept. 23, 2022) (allegations that Washington and prison warden were "(1) involved in creating and carrying out unconstitutional policies that caused harm to [plaintiff]; (2) failed to take necessary steps to ensure the safety and wellbeing of [plaintiff]; and (3) implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct" were akin to "respondeat superior claims" and failed to state a claim under Sixth Circuit authority).

Based on the above interpretations of Sixth Circuit precedent and Jones' failure to make specific allegations regarding an MDOC custom or policy that caused his deprivations, his claims against Campbell and Washington should be dismissed for failure to state a claim.

20

V.    Conclusion

For the reasons stated above, it is RECOMMENDED that defendants'

motion for summary judgment on the basis of exhaustion be DENIED as to all of

the moving defendants and that defendants' motion to dismiss as to Washington,

Chapman, Peeks, and Lee be GRANTED.  If this recommendation is adopted, the

case will proceed against Brockway, Lindberg, and John Doe.

Dated: October 11, 2023                    s/Kimberly G. Altman
Detroit, Michigan                          KIMBERLY G. ALTMAN
                                           United States Magistrate Judge


**<u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>**

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of
record and any unrepresented parties via the Court's ECF System to their
respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on October 11, 2023.

<div style="margin-left:40%">

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager

</div>