UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTELL JONES,

        Plaintiff,

v.

MARCY BROCKWAY, WILLIAM LINDBERG,
and JOHN DOE,

        Defendants.
_____/

Case Number 22-11047
Honorable David M. Lawson
Magistrate Judge Kimberly G. Altman

### OPINION AND ORDER SUSTAINING IN PART PLAINTIFF'S OBJECTIONS TO THIRD REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND CONTINUING ORDER OF REFERENCE

    Michigan prisoner Martell Jones filed a complaint without a lawyer's assistance against several employees of the Michigan Department of Corrections alleging that he was sexually assaulted by a prison guard when he was housed at the Gus Harrison Correctional Facility, known as ARF, located in Adrian, Michigan. The case was referred to Magistrate Judge Kimberly G. Altman for pretrial management. Some of the defendants were dismissed from the case on motion, and two of the remaining defendants, William Lindberg and Marcy Brockway, filed a motion for summary judgment. Judge Altman filed a report on February 3, 2025 recommending that the motion be granted and that the Court dismiss the case in full, including the claims against the John Doe defendant who never was identified by name or served with process. The plaintiff filed timely objections to the report and recommendation, and the case is before the Court for fresh review.

I.

A.

    Jones alleges that defendant William Lindberg sexually abused him in the summer of 2021 while he was an inmate at ARF. Jones says that he reported the abuse to defendant Marcy

Brockway, the officer who managed his unit, but his reports went unanswered and instead prompted retaliation.

Jones was transferred to ARF on August 5, 2021 to participate in the facility's Secure Status Residential Treatment Program (SSRTP), which supports inmates with serious mental illnesses. Aff. of Marcy Brockway, ECF No. 56-3, PageID.462. According to Brockway, who was the Resident Unit Manager for Jones' housing unit, Jones was in Phase II of the SSRTP program in August of 2021. *Id.* at PageID.462-63. During Phase II, inmates are allowed out of their cells only to attend therapy or access the yard and must be escorted by a corrections officer for any movement outside of their cells. *Id.* at PageID.463. Jones' stint at ARF corresponded with the height of the COVID-19 pandemic. At the time, the MDOC's COVID protocols imposed certain additional procedures for inmates who recently had been transferred to a new facility. Inmates, like Jones, who refused a COVID test, were to be isolated in quarantine at their new prison for fourteen days. *See* ECF No. 56-7, PageID.507-08; ECF No. 56-8, PageID.532. Brockway states that Jones would not have had access to the yard or been outside his cell for group therapy during his quarantine period. ECF No. 56-3, PageID.463.

Jones alleges that he was sexually abused by defendant Lindberg, a guard who worked on his unit, shortly after he arrived at ARF. In his amended complaint, he alleged that the assaults occurred "[i]n our around August of 2021." ECF No. 31, PageID.182. During his deposition on June 6, 2024, Jones testified that the abuse took place on August 16, 17, 18, and 23 of 2021. Martell Jones dep., ECF No. 56-4, PageID.471. Defense counsel did not ask, and the plaintiff did not explain, how he pinpointed those dates. He stated that he was abused on other dates as well but could not recall exactly when. *Id.* at PageID.476. According to Jones, each instance proceeded similarly. Lindberg first would place him in restraints through the slot in his cell door at some

point between 6:00 a.m. and noon. *Id.* at PageID.471. He then would direct Jones to kneel on his bed before entering the cell, unbuttoning Jones' prison jumpsuit, and touching his genitals, buttocks, and anus. *Id.* at PageID.472. Jones says that Lindberg allegedly threatened to tase or mace him if he did not comply. *Id.* at PageID.473. Lindberg then would escort him to group psychotherapy sessions. *Id.* at PageID.474-76. Jones testified that each assault would last between twenty seconds and five minutes. *Id.* at PageID.472-73. He also accuses Lindberg of making "inappropriate comments" while escorting him.

Jones testified that he informed Brockway of Lindberg's sexual abuse and comments both verbally on her rounds and via prison kites, although he was not sure of the exact dates he reported to her. He also says that she was aware of Lindberg's "propensity" to go into prisoner cells unsupervised. *Id.* at PageID.476. He says that Brockway nevertheless failed to intervene and, in fact, retaliated against him by initiating his transfer to another facility during a meeting of his treatment team, ending prematurely his participation in SSRTP. Decl. of Martell Jones, ECF No. 67, PageID.645. On December 7, 2021, Jones was transferred to the Michigan Reformatory Correctional Facility (RMI) in Ionia. He presently is housed at the Baraga Correctional Facility.

Lindberg emphatically denies assaulting Jones, threatening him, or making inappropriate comments. Lindberg decl., ECF No. 56-5, PageID.483. The defendants attached to their motion for summary judgment a copy of Lindberg's timecard, which indicates that he did not report working on August 16, the alleged date of the first assault. Similarly, Brockway denies that Jones ever reported to her that Lindberg assaulted him or made inappropriate comments. Brockway Aff., ECF No. 56-3, PageID.464. She maintains that if she had been informed about the assaults or harassment, she would have reported the incidents in compliance with MDOC policies. *Id.* at PageID.464-65. She also denies threatening to transfer Jones or being involved

with the decision that resulted in his later transfer out of ARF and asserts that she lacks the authority to order a prisoner transfer. *Id.* at PageID.465.

The defendants attached to their motion portions of Jones' mental health treatment records they say demonstrate that Jones' allegations are false. Relevant here, the records state that as of August 17, 2021, Jones was on quarantine status because he recently had refused a COVID test. Medical Records, ECF No. 56-6, PageID.488. They also suggest that his provider saw him via telehealth. *Ibid.* The relevant MDOC records appear to reflect that Jones began group therapy on August 23, 2021 and attended at least three sessions. *Id.* at PageID.496.

In a subsequent declaration, Jones states that he was not placed in quarantine on his arrival at ARF, nor was he managed in accordance with the MDOC regulations requiring his isolation, so he ultimately attended group therapy and had yard time in "August of 2021." ECF No. 67, PageID.642-43. He also says that he was outside of his cell for a Class I Misconduct Hearing on August 6, 2021, which was conducted via video conference and was documented in another case, *Jones v. Slater*, No. 22-10188 (E.D. Mich.). *Id.* at 643.

B.

Jones's amended complaint in this case named several defendants, including the warden at ARF and the MDOC director, seeking damages and injunctive relief. He alleged that Lindberg's abuse and the other employees' failure to stop it violated his right to be free from cruel and unusual punishment under the Eighth Amendment, and that his transfer amounted to retaliation in violation of the First Amendment and violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*. The Court referred the case to Magistrate Judge Kimberly G. Altman for all pretrial proceedings. Several defendants filed a motion to dismiss or for summary judgment contending that Jones failed to

exhaust his administrative remedies. ECF No. 33. The Court granted that motion as to many of the defendants, leaving Brockway, Lindberg, and John Doe as the remaining defendants in the case. Brockway and Lindberg then moved for summary judgment, and Jones responded. On February 3, 2025, Judge Altman filed a report recommending that the Court grant the motion.

Judge Altman determined that no reasonable jury could find that Lindberg and Brockway violated Jones' Eighth Amendment rights because of the strength of the evidence in support of their case. For instance, she observed that Lindberg's timecard suggests that he did not work on the date of the first alleged assault. She also explained that under MDOC policies in effect at the time of the alleged assaults, Jones would have been on quarantine status until August 20, 2021 so he would not have been transported for therapy. She rejected his testimony to the contrary on the ground that it conflicted with his mental health treatment and disciplinary records which display that he was seen by telehealth. Judge Altman also referred to Jones' medical records, which reflect that he did not begin group therapy until August 23, and therefore cast further doubt on his claims that Lindberg assaulted him before then as Jones' testimony was clear that each assault occurred before he was taken to group therapy.

Turning to Jones's claims against Brockway, Judge Altman rejected the defendants' contention that Jones' allegations were based on a supervisory liability theory, explaining that his claims allege a direct Eighth Amendment violation based on her disregard of his report of sexual assault. And on that claim, she suggested that there were fact questions about whether Brockway believed Jones' report, which might infer her subjective culpability. Nevertheless, because Judge Altman concluded that a reasonable jury could not find that Lindberg did assault Jones, she surmised that he could not satisfy the objective component of an Eighth Amendment claim.

Judge Altman also would reject the plaintiff's claim that his transfer amounted to retaliation in violation of the First Amendment because Jones had not offered any allegations about deficiencies in the RMI facility that would render his transfer to there an adverse action. She explained that even if his transfer caused his early discharge from the SSRTP program, that would not rise to the level of an adverse action. She also determined that there was no genuine dispute of material fact on the causation element of a retaliation claim because Jones' assertions that Brockway was involved in his transfer were speculative and conclusory.

Judge Altman suggested that the defendants also were entitled to summary judgment on Jones' ADA and Rehabilitation Act claims because his testimony was clear that his discharge from the SSRTP program and transfer to the RMI facility were on account of his reports against Lindberg, not because of his mental health disabilities. She added that Jones' allegations more naturally present a disagreement over his medical care, which does not give rise to a discrimination claim. Finally, Judge Altman recommended dismissing without prejudice Jones' claims against the John Doe defendant because of Jones's failure to identify or serve that defendant within the time limitations specified by Federal Rule of Civil Procedure 4(m).

Jones filed twelve numbered objections within the time allowed. They are directed mainly toward his Eighth and First Amendment claims. He does not challenge the recommendation to dismiss the ADA and Rehabilitation Act claims, and he takes no issue with the recommendation to dismiss the unidentified and unserved John Doe defendant.

II.

When a party files timely objections to a report and recommendation, the court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v.*

*Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This fresh review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

This review is not plenary, however. "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

Objections to a magistrate's report and recommendation must be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object," because it does not focus the Court's attention on any specific issues for review, "thereby making the initial reference to the magistrate useless." *Ibid.* Moreover, the plaintiff may not raise new claims or theories not raised previously. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (explaining that the Magistrate Judges Act does not permit "parties to raise at the district court stage new arguments or issues that were not presented to the magistrate").

The first seven of the plaintiff's twelve objections largely repeat the general theme that the magistrate judge inappropriately weighed facts and made credibility determinations when reviewing the summary judgment motion. In a similar vein, Jones' eighth and ninth objections take issue with how the magistrate judge allegedly relied on documents submitted by the defendants that he says are "fabricated and falsified." ECF No. 71, PageID.680. His final three objections focus on the magistrate judge's apparent conclusion that he, in fact, was managed under the MDOC quarantine procedures. He says that Judge Altman concluded that to be true because he participated in misconduct hearings and medical appointments virtually, but he never had the opportunity to contest this fact. He maintains that it was standard practice for mental health evaluations and misconduct hearings to be conducted virtually, so whether they were is not necessarily indicative of whether he was managed under the applicable MDOC COVID protocols.

A.  Eighth Amendment Claim

The defendants rely in part on the doctrine of qualified immunity. That doctrine insulates state actors from liability as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the qualified immunity defense is raised, Jones "must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)).

The qualified immunity defense may be raised at any stage of the case. A government actor is entitled to qualified immunity from suit at the summary judgment stage of the case if the evidence in the record shows that the official's conduct did not violate "clearly established . . . constitutional rights of which a reasonable person would have known." *Jackson v. City of*

*Cleveland*, 64 F.4th 736, 745 (6th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The plaintiff carries the burden of establishing fact questions on both those elements, which the Court may answer in either order. *Jones v. Naert*, 121 F.4th 558, 564 (6th Cir. 2024) (citing *Jackson*, 64 F.4th at 745). But courts must weave the summary judgment standard into each step of the qualified immunity analysis. *Scott*, 550 U.S. at 380. That means that the court must view the facts in the light most favorable to the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

There is no dispute over the governing substantive law. The Eighth Amendment, as made applicable to states via the Fourteenth Amendment, *United States v. Georgia*, 546 U.S. 151, 157 (2006), prohibits the infliction of "cruel and unusual punishments" against prisoners. U.S. Const. amend. VIII. Federal courts have interpreted the amendment to prohibit "any punishment that violates civilized standards of decency or reflects unnecessary and wanton infliction of pain." *Solomon v. Michigan Dep't of Corr.*, 478 F. App'x 318, 320 (6th Cir. 2012) (citing *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)). A prison official also may be liable when he or she exhibits "deliberate indifference" to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011).

An Eighth Amendment claim has an objective and a subjective component. *Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010). In the context of cruel and unusual punishment claims, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Although "not every malevolent touch by a prison guard gives rise to a federal cause of action," *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (cleaned up), "[f]ederal courts have long held

that sexual abuse is sufficiently serious to violate the Eighth Amendment," *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019). The subjective component of an Eighth Amendment claim requires that the prison official act with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. When a prisoner's claims center on the conditions of their confinement or mistreatment in a prison, the subjective prong requires a showing of "deliberate indifference." *Rafferty*, 915 F.3d at 1094. This element can be proven by circumstantial evidence from which the fact finder can conclude that the state actor perceived the risk, *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), or "from the very fact that the risk was obvious." *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).

The defendants do not take issue with these general principles and concede that the sexual abuse of a prisoner by a guard, if proven, satisfies both components of the Eighth Amendment claim. ECF No. 56, PageID.434. By extension, they must accept that their qualified immunity defense is dependent on the version of the facts that is accepted, since the constitutional right alleged has been clearly established. *See Farmer*, 511 U.S. at 828; *Rafferty*, 915 F.3d at 1097 (noting that is clearly established that "ignoring known risks of harm to an inmate due to inadequate medical care, inhumane conditions of confinement, or abuse by another inmate could constitute deliberate indifference."); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) ("[T]he constitutional right [of inmates] to be free from deliberate indifference to assault and sexual abuse [is] clearly established."). The defendants insist, however, that the record does not prove the plaintiff's allegations.

Under Federal Rule of Civil Procedure 56, the summary judgment rule, the party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Alexander*

*v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

The plaintiff's objections numbered 1 through 7 address the standard for adjudicating motions for summary judgment and focus on Judge Altman's rationale that a reasonable jury could not find that Lindberg and Brockway violated his Eighth Amendment right to be free from cruel and unusual punishment. His objections are well taken. When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander*, 576 F.3d at 558 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court need not favor the non-moving party when his version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, this is not such a case.

In reaching her conclusion, Judge Altman homed in on Jones' testimony that Lindberg assaulted him on four specific dates — August 16, 17, 18, and 23 of 2021 — before escorting him to group therapy sessions. She relied heavily on the documents submitted by the defendants to conclude that the assaults could not have occurred as Jones alleges so there was no genuine dispute of material fact. She pointed out, for instance, that Lindberg's timecard indicated that he did not work on August 16, 2021, the date of the first alleged assault. She also took note of the plaintiff's medical records, which include statements suggesting that Jones did not have any group therapy

sessions until August 23, which is after the abuse allegedly began, casting further doubt on his contentions. And she emphasized that under then-applicable prison regulations mandating that he quarantine, Jones would not have been permitted to attend group therapy sessions until at least August 20, fourteen days after his arrival at the prison. These points may certainly pose serious problems for the plaintiff's case, but they are not necessarily fatal. A reasonable jury still could credit the plaintiff's testimony and discount the documents supporting the defendants' position. Viewed in this light, fact questions remain, and his Eighth Amendment claim can proceed.

Jones provided sworn testimony about his version of events during his deposition. Deposition testimony properly may be used by a party to assert that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A). He also provided a declaration, meant to serve as evidence under 28 U.S.C. § 1746, that disputes aspects of the defendants' evidence. *See* ECF No. 67. This also is a permissible method of demonstrating the existence of a fact dispute, provided that it is based on "personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The fact that his declaration arguably serves Jones' own interests is no basis to discard it. "A court may not disregard evidence merely because it serves the interests of the party introducing it." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010); *see also Niemi v. NHK Spring Co.*, 543 F.3d 294, 300 (6th Cir. 2008) (stating that a party's affidavit, although "arguably self-serving, is not 'no evidence.'"). Although some of the statements in his declaration might be considered conclusory or beyond the scope of his personal knowledge, *e.g.*, ECF No. 67, PageID.645 ("Marcy Brockway . . . orchestrated my transfer through members of the Security Classification Committee in retaliation for me making complaints of being sexually abused by William Lindberg."), that is not the case for all of the statements, *e.g.*, *id.* at PageID.642-43 ("Prison officials at Gus Harrison

Correctional Facility did not follow the COVID protocol, set forth in the Director's Office Memorandums: 2021-26R7; 2021-26R8, in regard to my confinement in August 2021.").

Keeping this in mind, the defendants' evidentiary submission does not make the case "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. On one side, Jones testified specifically about being assaulted by Lindberg and reporting the assaults to Brockway. On the other, Lindberg and Brockway presented a personal declaration and affidavit, respectively, denying the material aspects of Jones' allegations. Conflicting testimony presents paradigmatic credibility issues that must be resolved by a jury, not by the Court. *Anderson*, 477 U.S. at 255.

The magistrate judge was right to consider documentary evidence the defendants presented that casts significant doubt on Jones' version of events, but that evidence does not completely eliminate fact questions in the case. A reasonable jury could view the documents as powerful evidence for the defendants, or it could accept the plaintiff's explanations that the documents are unreliable and should be discounted.

Starting with Lindberg's timecard: the document undeniably shows no record that Lindberg worked on August 16, which certainly is persuasive inferential proof that he was not present at the prison on the day Jones alleges first being assaulted. But it does not prove this fact conclusively. The Court need not weigh in on Jones' contention that the timecard was fabricated to reach this conclusion. In his declaration, Jones testified that Lindberg did work that day. *See* ECF No. 67, PageID.643. A reasonable jury could accept Jones' version of events and discount the significance of the timecard by determining, for instance, that the document is inaccurate or that Lindberg was present at the prison and did not properly punch in.

Likewise, Jones' medical and therapy records do not conclusively rule out his version of events. Certainly, this evidence, if admitted at trial, likely would undermine his story because of his testimony that *each* assault occurred before he was transported to group therapy. But that is a matter of credibility better assessed by a jury. And by themselves, the documents merely establish that there is *no record* that Jones participated in group therapy before August 23. It is entirely possible that the therapy records inaccurately recorded the date that Jones' therapy began or fail to document every instance Jones was transported to obtain therapy. Considering the frequency of inaccuracies in medical records generally, a reasonable jury could decide that the records are not entitled to significant weight.

Next, Judge Altman relied on the prison system's then-applicable COVID policies for the proposition that Jones would have been on quarantine status due to his failure to complete a COVID test upon arriving at the prison on August 5, 2021. But these policies similarly do not establish that there are no genuine disputes of material fact. The relevant MDOC policies simply state that a prisoner who refuses a test would be placed in isolation for 14 days. ECF No. 56-8, PageID.532. They do not state that a prisoner placed in isolation would be barred from being transported or attending therapy. *See id.* at PageID.527 (describing isolation areas). Consider that one policy expressly states that "[p]sychological services shall continue to be provided as necessary" within a prison's designated isolation areas. *Ibid.* Of course, Brockway testified that a prisoner in quarantine would not be permitted out of their cell, Brockway Aff., ECF No. 56-3, PageID.464, and it is unlikely that a prisoner subject to COVID isolation protocols would participate group therapy. Such a practice, after all, would seem to defeat the purpose of the quarantine. But Jones maintained in his declaration that he was *not* managed in accordance with

the MDOC's COVID policies, ECF No. 67, PageID.642, so whether he was or not requires assessing whether Jones or Brockway is more credible.

Judge Altman determined that Jones' testimony on that point should not be afforded weight because his August 17 medical records disclose that he had a mental health examination via telehealth and he had a misconduct hearing via video on August 6, supporting the idea that he was on quarantine. Jones's final three objections take issue with this reasoning, largely on the basis that conducting appointments virtually was standard procedure in the prison system at the time, quarantine or not, and he was unable dispute her inference previously. These objections largely are beside the point because the fundamental flaw with Judge Altman's reasoning is that it substitutes her finding for a jury's. And even if one were to credit the defendants' contention that Jones was in quarantine and not participating in group therapy, that does not prove conclusively that he was not sexually abused.

Finally, the magistrate judge's reasoning focuses entirely on the four specific dates that Jones recalled being assaulted. But there is no evidence in the record that suggests that Jones's allegations of the specific dates are accurate or how he recalled those dates. Remember that he alleged in his amended complaint that the assaults occurred "[i]n our around August of 2021." ECF No. 31, PageID.182. And the magistrate judge's fixation on those four dates neglects the fact that Jones testified that Lindberg assaulted him on other dates as well. ECF No. 56-4, PageID.476 ("There were — there were other dates but I'm not sure of the exact dates."). The evidence presented by the defendants does not rule out the possibility that Jones was assaulted on other dates also.

All of this is to illustrate that the magistrate judge's conclusion that Lindberg and Brockway are entitled to summary judgment requires making credibility determinations in favor

of the defendants. Although there are some circumstances where a judge may weigh credibility on a summary judgment motion, none appear applicable here. *See United States v. Osborne*, 807 F. App'x 511, 520 (6th Cir. 2020). Jones's declaration, although arguably self-serving, does not obviously contradict his prior sworn testimony. *See United States ex rel. Compton v. Midwest Specialties*, 142 F.3d 296, 303 (6th Cir. 1998). Nor does his testimony seem so implausible that "no reasonable person would believe it." *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 537 (6th Cir. 2018) (quoting *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997)).

The defendants have presented a strong case that can generate skepticism about the veracity of Jones' allegations, but Jones has mustered sufficient evidence to require a factfinder at trial to determine which version of the events involving defendant Lindberg is the true one.

According to the magistrate judge's report, Jones's Eighth Amendment deliberate indifference claim against Brockway is derivative of his claim against Lindberg. Judge Altman concluded that if a reasonable jury could not find that Lindberg assaulted Jones, Brockway also was entitled to summary judgment because Jones could not establish the objective component of a claim. On her way to this conclusion, she rejected the defendants' argument that Jones' allegations against Brockway dealt with alleged violations of prison policies and that she was not vicariously liable for Lindberg's conduct, emphasizing that Jones's claims against Brockway "sound in direct Eighth Amendment violations because Brockway knew of Jones's sexual abuse at the hands of Lindberg and still disregarded Jones's complaints." ECF No. 70, PageID.667. Judge Altman also rejected the defendants' argument that Jones had not established the subjective component of an Eighth Amendment claim, finding that there were fact questions about whether Brockway believed Jones' reports of abuse and whether she knew of other instances of Lindberg's alleged abusive conduct. The defendants did not object to any part of the magistrate judge's

reasoning, and therefore they forfeit any objections. *McClanahan*, 474 F.3d at 837. Thus, under the magistrate judge's uncontested logic, Jones is able to maintain an Eighth Amendment claim against Brockway also based on her alleged deliberate indifference to his reports of being assaulted.

### B. Remaining Claims

Jones also pleaded claims for violations of his First Amendment Rights, the Americans with Disabilities Act, and the Rehabilitation Act. However, he does not present any specific objections or developed argument challenging the magistrate judge's conclusion that the defendants are entitled to summary judgment on these claims, and no flaws with the magistrate judge's reasoning immediately are apparent from the record. He also does not take issue with the magistrate judge's conclusion that his claims against the John Doe defendant should be dismissed without prejudice based on his failure to complete service within the applicable time limits. *See* Fed. R. Civ. P. 4(m). The plaintiff's failure to file objections to a determination in the report and recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to the magistrate judge's report releases the Court from its duty to independently review the matter. *Thomas v. Arn*, 474 U.S. 140, 149 (1985). The Court will adopt these aspects of the magistrate judge's recommendation.

### III.

Fact issues preclude summary judgment on the plaintiff's Eighth Amendment claim against defendants William Lindberg and Marcy Brockway. The plaintiff has not offered specific objections to the recommendation to dismiss the rest of the claims in the amended complaint.

Accordingly, it is **ORDERED** that the plaintiff's objections to the magistrate judge's report and recommendation (ECF No. 71) are **SUSTAINED IN PART AND OVERRULED IN PART**.

It is further **ORDERED** that the magistrate judge's report and recommendation (ECF No. 70) is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that the defendants' motion for summary judgment (ECF No. 56) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiff's claims based on violations of the First Amendment, the Americans with Disabilities Act, and the Rehabilitation Act are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** in all other respects.

It is further **ORDERED** that the amended complaint is **DISMISSED WITHOUT PREJUDICE** as to defendant John Doe.

It is further **ORDERED** that the referral of the matter to the assigned magistrate judge is **CONTINUED** under the previous order of reference.

                                                   s/David M. Lawson
                                                   DAVID M. LAWSON
                                                   United States District Judge

Dated: March 10, 2025